**Michael OSTROWSKI, Plaintiff–Appellant,**

**v.**

**CITY OF MONTROSE, Defendant–Appellee.**

No. 15–1456

United States Court of Appeals, Tenth Circuit.

FILED July 11, 2016

(D.C. No. 1:14–CV–01934–RBJ), (D. Colorado)

Paul Gordon, Stephen F. McWhirter, Gordon & McManus LLC, Denver, CO, for Plaintiff–Appellant.

Matthew John Broderick, Jennifer Fawn Kemp, Eric Michael Ziporin, Senter Goldfarb & Rice, Denver, CO, for Defendant–Appellee.

Before HARTZ, O'BRIEN, and PHILLIPS, Circuit Judges.

**ORDER AND JUDGMENT** *

Gregory A. Phillips, Circuit Judge

On July 11, 2012, City of Montrose Police Officers Dennis Beery and Chris Velasquez arrested Michael Ostrowski on a bench warrant. Ostrowski "has a large torso and large wrists on comparatively shorter arms." Appellant's Opening Br. at 2. Ostrowski claims that his wrists are too large for standard handcuffs and that he cannot comfortably bring his wrists together behind his back. Ostrowski testified in his deposition that in putting the standard handcuffs on him the "two officers pull[ed his] shoulder to the back of [him] and pushed real hard to put the handcuffs on [him]." R. at 149. Ostrowski "com-

---

* After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

plained that the cuffs hurt" and the officers "basically told [him] to live with it." *Id.* at 153–54.

According to Officer Berry, Ostrowski mentioned his shoulder hurting before being seated in the back of the patrol car but "referenced the handcuffs just once." *Id.* at 82. He did not mention a hand or wrist injury. Ostrowski asked if the handcuffs would be removed when the patrol car arrived at the Montrose County Jail. Once they arrived at the jail after a three-minute drive the officers removed the handcuffs after briefly patting down Ostrowski. At most, Ostrowski was handcuffed for seven minutes and thirteen seconds. They removed the handcuffs "just over three minutes" after Ostrowski requested their removal. *Id.* at 83. Ostrowski spent the night in jail. The next morning, the issuing court quashed the warrant and released Ostrowski.

More than two years later Ostrowski went to Dr. Davis Hurley claiming wrist injuries. In his Amended Complaint, Ostrowski claims "general and specific damages" from "a torn rotator cuff, nerve damage resulting in permanent numbness in both hands, cuts, bruises, medical expenses, physical impairment, pain, suffering, and severe emotional distress." *Id.* at 29.

Ostrowski's one claim in his Amended Complaint is for a violation of his Fourth Amendment rights under 42 U.S.C. § 1983 against the City of Montrose. He does not sue the officers in their individual capacities. In the City of Montrose's summary judgment motion, it presented evidence that every 18 to 24 months its police officers are instructed and trained on the proper use of handcuffs in accordance with FBI Arrest Control and Defense Tactics. That training includes learning to check whether the handcuffs fit and how to restrain larger individuals with alternative methods. The officers are also trained to respond to complaints of discomfort or pain from the handcuffs and how to react to obvious injury from handcuffs. Before arresting Ostrowski, Officer Beery had received the FBI training three times and Officer Velasquez once.

Ostrowski appeals the district court's grant of summary judgment to the City of Montrose. Exercising jurisdiction under 28 U.S.C. § 1331, we affirm.

We review de novo a district court's grant of summary judgment. *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1195 (10th Cir. 2008). We view the evidence and all reasonable inferences from it in the light most favorable to the nonmoving party. *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 533 (10th Cir. 2014). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

"Local governing bodies ... can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officer." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (footnote omitted). But "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 691, 98 S.Ct. 2018. Thus, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* Instead, a municipal

entity may be held liable only for an act it officially sanctioned or for the actions of an official with final policymaking authority. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 122–23, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). An official policy can be shown through an official decision or statement or through "the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Id.* at 127, 108 S.Ct. 915 (quotation marks omitted).

When a plaintiff's claim is based on a failure to train, "[a] municipality's culpability for a deprivation of rights is at its most tenuous." *Connick v. Thompson*, 563 U.S. 51, 61, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011). "To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.' " *Id.* (alterations in original) (quoting *City of Canton v. Harris*, 489 U.S. 378, 395, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).

Ostrowski asserts that the City of Montrose's failure to train officers in handcuffing large people led to his injury. "In some circumstances, unduly tight handcuffing can constitute excessive force where a plaintiff alleges some actual injury from the handcuffing and alleges that an officer ignored a plaintiff's timely complaints (or was otherwise made aware) that the handcuffs were too tight." *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007).

To defeat the City of Montrose's summary judgment motion, Ostrowski first needed to point to evidence establishing a genuine dispute of material fact that the municipality inadequately trained its officers in the use of handcuffs on larger people. Because he has failed to do so, we

do not evaluate the rest of a *Monell* claim for failure to train.

Ostrowski's Amended Complaint and his summary judgment evidence describe the officers' conduct in detail. But his allegations against the City of Montrose are woefully inadequate. He asserts that the City of Montrose knew that its police officers would inevitably encounter larger individuals. Like the district court, we "accept that as a matter of common sense." R. at 169. On the issue of training, the City of Montrose has provided evidence of its training officers on making arrests, including any associated handcuffing of large individuals. The City of Montrose also puts forward uncontested evidence that both officers involved in Ostrowski's arrest received the training on handcuffing larger people, Officer Beery three times and Officer Velasquez once. In response, Ostrowski asserts that, even if the City of Montrose intended to train its officers in handcuffing large people, "a reasonable jury could find that Montrose failed to actually provide the training." Appellant's Opening Br. at 10. This is mere speculation with no evidence supporting it (in fact, the only evidence in the record shows that the training did take place) and is insufficient to meet Ostrowski's burden. Alternatively, Ostrowski asserts that "a reasonable jury could find that Montrose failed to ensure that its officers received and/or conformed to the training, thereby unconstitutionally failing to apply its policy." *Id.* Again, Ostrowski fails to offer any evidence to support his speculation. In sum, Ostrowski has failed to put forth credible evidence that creates a dispute of material fact.

Ostrowski misunderstands the burdens each party faces at summary judgment. He asserts that reversal is appropriate because the City of Montrose "claims it trained its officers on the use of handcuffs,

[and] suggest[s] that the training included the use of handcuffs on very large individuals." He further asserts that the City of Montrose "failed to produce evidence preventing a reasonable jury from rejecting that argument." Appellant's Opening Br. at 10. But it was not the City of Montrose's responsibility to produce sufficient evidence such that no jury could possibly disbelieve that it had so trained the two officers. Rather, once the City of Montrose produced evidence that it had provided the two officers the described handcuffing training, it was Ostrowski's burden to show that there was a genuine dispute of material fact that the City of Montrose had not done so. This Ostrowski has not done. Therefore his claim fails.